RECORD NO. 13-2132

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

GEORGE M. OLIVER,

*Trustee - Appellant,*

v.

HAYWOOD STANLEY RUDD,

*Debtor - Appellee.*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

**OPENING BRIEF OF TRUSTEE-APPELLANT
GEORGE M. OLIVER**

Amy M. Currin
OLIVER FRIESEN CHEEK, PLLC
P.O. Box 1548
405 Middle Street
New Bern, North Carolina 28563
(252) 633-1930 Telephone
(252) 633-1950 Facsimile

*Counsel for Trustee-Appellant*

January 13, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2132__   Caption: _George M. Oliver, Trustee v. Haywood Stanley Rudd, Debtor_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Georeg M. Oliver, Chapter 7 Trustee for Hawyood Stanley Rudd_
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
    (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?   ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
     If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☑ YES ☐ NO
If yes, identify any trustee and the members of any creditors' committee:

George M. Oliver, Chapter 7 Trustee for Haywood Stanley Rudd, File No.: 12-08130-8-JRL

Signature: /s/ Amy M. Currin                              Date: September 27, 2013

Counsel for: Appellant

# CERTIFICATE OF SERVICE
**********************************

I certify that on  September 27, 2013  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Anna Brake Osterhout (via CM/ECF)
Amos U. Priester, IV (via CM/ECF)
Wayne K. Maiorano (via CM/ECF)

/s/ Amy M. Currin                                          September 27, 2013
        (signature)                                            (date)

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE

TABLE OF CONTENTS........................................................................i

TABLE OF AUTHORITIES ..........................................................ii-iii

BASIS FOR APPELLATE JURISDICTION..........................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE...………………………..…………………….....2-4

SUMMARY OF THE ARGUMENT ................................................. 4-5

ARGUMENT ......................................................................... 5-16

      I.      STANDARD OF REVIEW .................................................5

      II.     APPLICABLE LAW………………………………………...6-12

      I.      APPLICATION OF LAW TO FACTS…………...…………13-17

CONCLUSION ......................................................................17

REQUEST FOR ORAL ARGUMENT ...............................................17

CERTIFICATE OF COMPLIANCE...................................................19

CERTIFICATE OF SERVICE………………………………………………20

# TABLE OF AUTHORITIES

**Cases**

Kibb v. Sumski (In re Kibbe),
     361 B.R. 302, 305 (1st Cir. B.A.P. 2007)...………………..……………..5

Terry v. Meredith (In re Meredith),
     527 F.3d 372, 375 (4th Cir. 2008)……...………………………………..…5

Willis v. Menotte, 424 Fed. App. 880 (11th Cir. 2011), *aff'g* 2010 U.S. Dist.
     LEXIS (S.D. Fla. 2010), *aff'g* In re Willis, 2009 Bankr. LEXIS 2160
     (Bankr. S.D. Fla. 2009)....................................................................12, 14, 16

**Statutes and Rules**

11 U.S.C. § 522(b)……. ………………………………..…………………..6
11 U.S.C. § 522(b)(3)(C) ...........................................................................1, 2, 6
11 U.S.C. § 522(b)(4)(A)………………………………………………....1
26 U.S.C. § 408.......................................................................................1
26 U.S.C. § 408(a) ...................................................................................9
26 U.S.C. § 408(d)(3).......................................................................9, 10, 14
26 U.S.C. § 408(e) ...............................................................................7, 8
26 U.S.C. § 4975…………………………………………………………1
26 U.S.C. § 4975(3)(3)(A) ....................................................................9
26 U.S.C. § 4975(c)(1)...............................................................8, 9, 13
26 U.S.C. § 4975(c)(1)(B) ...............................................................13, 14
26 U.S.C. § 4975(c)(1)(D) and (E) ...............................................10, 13, 14
26 U.S.C. § 4975(e)(2)(A) ...............................................................9, 13
28 U.S.C. § 157(b) ……………………..………………………............1
28 U.S.C. § 158(d)(2)(A)…………………………………………....1
28 U.S.C. § 1334(b)...............................................................................1
NCGS 1C-16-1(a)(9)…………..……………………………………….6
NCGS §1601(f) ...................................................................................6

**Other Authorities**

H.R. 93-779, 1974-3 C.B. (Supp.) 380 ...................................................11

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This matters arises pursuant to a Chapter 7 trustee's objection a debtor's claim of exemption in his Individual Retirement Account ("IRA") pursuant to 11 U.S.C. §522(b)(4)(A).

The United States Bankruptcy Court for the Eastern District of North Carolina ("Bankruptcy Court") had jurisdiction over this action pursuant to 28 U.S.C. § 157(b) and § 1334(b).  The Bankruptcy Court entered an Order in favor of the Appellee/Debtor denying the Trustee's objection on July 12, 2013.  (J.A. 299-309).  The Trustee timely filed its Notice of Appeal from the Bankruptcy Court's Order on June 26, 2013 (J.A. 310-311).  On July 19, 2013, the Bankruptcy Court entered an Order certifying the issue for direct appeal to this Court (J.A. 346-348).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d)(2)(A).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issue before this Court is whether the Debtor's withdrawal and personal use of funds from the IRA and prior to redeposit within 60 days constituted a prohibited transaction by a disqualified individual under 26 U.S.C. § 4975, thereby resulting in the loss of the IRA's tax-exempt status under 26 U.S.C. § 408 and creditor-exempt status under 11 U.S.C. § 522(b)(3)(C).

1

## STATEMENT OF THE CASE

A.    Nature of the Case

The present case involves a challenge by the Bankruptcy Trustee to the Debtor's claim of exemption of funds held in an IRA under 11 U.S.C. § 522(b)(3)(C).

B.    Proceedings and Dispositions of the Courts Below

On November 14, 2012 ("Petition Date"), Haywood Stanley Rudd (the "Debtor") filed a Chapter 7 Bankruptcy Petition ("Petition") in the Bankruptcy Court, Case No. 12-01830-8-JRL.  (J.A. 25-163).  George M. Oliver ("Trustee") was appointed as the trustee in the case by Order Appointing Successor Trustee on December 11, 2012.  (J.A. 164).  On Schedule C to his Petition, the Debtor claimed an exemption in the amount of $247,973.91 of funds held in his IRA.

On February 6, 2013, the Trustee commenced this action by filing an Objection to Debtor's Claim of Exemptions in the Bankruptcy Court.  (J.A. 165-170).  On February 14, 2013, the Debtor filed amended Schedules to his Petition which included amendments to his claims of exemption set forth on Schedule C.  (J.A. 171-196).  On March 15, 2013, the Trustee filed an Objection to Debtor's Amended Claim of Exemptions.  (J.A. 208-216).  On April 1, 2013, the Debtor filed a Response to Trustee's Objection to Debtor's Claim of Exemptions and

Response to trustee's Objection to Debtor's Amended Claim of Exemptions.  (J.A. 217-265).

The Bankruptcy Court held a hearing on the Objections on May 22, 2013 (J.A. 266-298), and entered an Order on June 12, 2013 denying the Trustee's Objection to the Debtor's claim of exemption of the funds held in his IRA (J.A. 299-309).

On June 26, 2013, the Trustee filed its Notice of Appeal from the Bankruptcy Court's Order (J.A. 310-311), a Motion for Leave to Stay pending Appeal (J.A. 312-317), and a Request for Certification of Issue for Appeal (J.A 318-332).   On July 19, 2013, the Bankruptcy Court entered an Order certifying the issue for direct appeal to this Court.  (J.A. 346-348).

The Debtor filed a Response to Trustee's Motion for Leave to Stay Pending Appeal on July 9, 2010. (J.A. 333-345).  The Bankruptcy Court held a hearing on the Trustee's Motion for Leave to Stay Pending Appeal and the Debtor's Response on July 18, 2013 and entered an Order Allowing Trustee's Motion for Leave to Stay Pending Appeal on August 5, 2013 (J.A. 349-350).

The Trustee timely filed a Petition for permission to Appeal with this court on August 18, 2013.  The Debtor filed a Response to the Petition on August 28, 2013. On September 13, 2013, this Court entered an Order granting the Trustee's Petition for permission to appeal.

3

C.     <u>Statement of Facts</u>.

On August 8, 2012, the Debtor withdrew twenty-five thousand dollars ($25,000.00) from his self-directed RBC Wealth Management SIMPLE IRA ("IRA"), and, on August 9, 2012, the funds were deposited into his PNC checking account.  Thereafter, the Debtor used the money withdrawn from the IRA for his living and personal expenses.   On October 9, 2012, the IRA was credited with a deposit of $25,000.00.  For Federal income tax purposes, the Debtor did not treat the $25,000.00 withdrawal as an early withdrawal from the IRA, thereby subjecting those funds to taxation, but rather, characterized the funds as a 60-day rollover.  On his bankruptcy Petition (J.A. 25-163), the Debtor claimed that the entire balance in the IRA was exempt from the claims of creditors under both North Carolina and Federal law.

## **<u>SUMMARY OF THE ARGUMENT</u>**

The bankruptcy court erred in denying the Trustee's objection to the exemption of the Debtor's IRA funds.   In order for the IRA to be exempt from the claims of creditors for bankruptcy purposes, it must first be exempt from federal income taxation.   The Internal Revenue Code ("IRC") makes it clear that the personal use of IRA funds constitutes a prohibited transaction resulting in the loss of the exemption for federal income tax purposes, and the personal use of any funds results in the loss of exemption for the entire IRA.  The Debtor improperly

4

relies on the 60-day rollover provisions of the IRC in asserting that the IRA maintained its tax-exempt, and therefore creditor-exempt, status, notwithstanding his personal use of the withdrawn funds during the interim period. There is nothing in the IRC that indicates that the prohibited transaction rules do not apply during the 60-day rollover period; in fact, the legislative history to the rollover rules expressly state that they do. In distinguishing the <u>Willis</u> decision from the subject case, the bankruptcy court imposed a "bad intention" requirement where none exists. The fact that it has become standard practice for taxpayers to use their IRA funds for personal purposes during the rollover period, and the informal Internal Revenue Service ("IRS") guidance that arguably supports that practice, cannot abnegate the clear statutory prohibition.

## ARGUMENT

## I.    STANDARD OF REVIEW

A bankruptcy court's conclusions of law including issues of statutory construction and interpretation of the Bankruptcy Code are reviewed de novo. *Terry v. Meredith (In re Meredith)*, 527 F.3d 372, 375 (4th Cir. 2008); *Kibb v. Sumski (In re Kibbe)*, 361 B.R. 302, 305 (1st Cir. B.A.P. 2007). The issues presented in this appeal are issues of statutory construction. The parties do not disagree about the relevant facts. Thus, this Court should conduct a de novo review of all issues.

5

## II.    APPLICABLE LAW

North Carolina law provides an exemption from the claims of creditors that applies to:

> Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code, including individual retirement accounts and Roth retirement accounts as described in Section 408(a) and 408A of the Internal Revenue Code, individual retirement annuities as described in Section 408(b) of the Internal Revenue Code, and accounts established as part of a trust described in section 408(c) of the Internal Revenue Code.

NCGS 1C-16-1(a)(9).

Although North Carolina has opted out of the federal exemptions provided in Section 522(d) of the Bankruptcy Code (N.C. Gen. Stat. §1601(f)), Section 522(b) provides similar exemption rights in retirement funds for states that have opted out of the federal exemption scheme.  Relevant provisions of Section 522(b) are as follows:

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in …paragraph 3 of this subsection…

> (b)(3)(C) retirement funds to the extent those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A 414, 457 or 501(a) of the Internal Revenue Code of 1986.

11 U.S.C. §522(b).

6

Section 408(e) of the IRC provides that the entire balance in an individual retirement account loses its tax-exempt status when and if the individual for whose benefit an individual retirement account is established engages in a prohibited transaction. Relevant provisions of Section 408(e) follow:

(e) Tax treatment of accounts and annuities

(1) Exemption from tax

Any individual retirement account is exempt from taxation under this subtitle unless such account has ceased to be an individual retirement account by reason of paragraph (2) or (3). Notwithstanding the preceding sentence, any such account is subject to the taxes imposed by section 511 (relating to imposition of tax on unrelated business income of charitable, etc. organizations).

(2) Loss of exemption of account where employee engages in prohibited transaction

(A) In general

If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in any transaction prohibited by section 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year. For purposes of this paragraph—

(i) the individual for whose benefit any account was

7

established is treated as the creator of such account, and

(ii) the separate account for any individual within an individual retirement account maintained by an employer or association of employees is treated as a separate individual retirement account.

(B) Account treated as distributing all its assets

In any case in which any account ceases to be an individual retirement account by reason of subparagraph (A) as of the first day of any taxable year, paragraph (1) of subsection (d) applies as if there were a distribution on such first day in an amount equal to the fair market value (on such first day) of all assets in the account (on such first day).

26 U.S.C. §408(e).

In relevant part, Section 4975(c)(1) of the IRC defines prohibited transactions to include:

(B) lending of money or other extension of credit between a plan and a disqualified person;

*
*
*

(D) any direct or indirect…transfer to, or use by or for the benefit of, a disqualified person of the income or assets of the plan;

8

> (E)  act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interests or for his own account;

26 U.S.C. §4975(c)(1).

For this purpose, a "disqualified person" includes a person who is a fiduciary with respect to the individual retirement account.   26 U.S.C. §4975(e)(2)(A).   A fiduciary includes:

> any person who—(A) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets

26 U.S.C. §4975(3)(3)(A).

Section 408(d)(3) of the IRC provides that, although amounts distributed from an individual retirement plan are included in gross income of the distributee with certain exceptions.  26 U.S.C. §408(a).  One of these exceptions is for funds qualifying as a rollover contribution as follows:

> (3) Rollover contribution
> An amount is described in this paragraph as a rollover contribution if it meets the requirements of subparagraphs (A) and (B).
>
> > (A) In general
> >
> > Paragraph (1) does not apply to any amount paid or distributed out of an individual retirement account or individual retirement annuity to the individual for whose benefit the account or annuity is maintained if—

9

(i) the entire amount received (including money and any other property) is paid into an individual retirement account or individual retirement annuity (other than an endowment contract) for the benefit of such individual not later than the 60th day after the day on which he receives the payment or distribution

*
*
*

(D) Partial rollovers permitted

(i) In general

If any amount paid or distributed out of an individual retirement account or individual retirement annuity would meet the requirements of subparagraph (A) but for the fact that the entire amount was not paid into an eligible plan as required by clause (i) or (ii) of subparagraph (A), such amount shall be treated as meeting the requirements of subparagraph (A) to the extent it is paid into an eligible plan referred to in such clause not later than the 60th day referred to in such clause.

26 U.S.C. §408(d)(3).

There is no statutory provision providing that a disqualified person may ignore the prohibited transaction proscriptions on personal use of individual retirement account funds set forth in IRC 4975(c)(1)(D) and (E).  In fact, the legislative history of the sixty-day rollover provision indicates that the tax-free rollover rules were intended only to provide investment flexibility for the

10

beneficiary of the account, and not to eliminate the continuing proscriptions applicable to all individual retirement accounts.

> *Tax-free rollovers.*—To permit flexibility with respect to the investment of an individual retirement account, the bill provides that money or property may be distributed from an individual retirement account to the person for whose benefit the account is maintained without payment of tax, provided **this same money** or property is reinvested by the individual within 60 days in another qualifying retirement account maintained for this benefit. **Rollover transfers to an individual retirement account are, of course, subject to the same limits and rules as other individual retirement accounts (such as, the rules relating to premature distributions or prohibited transactions.**)

H.R. 93-779, 1974-3 C.B. (Supp.) at 380. *Emphasis added.*

In an apparent effort to curb perceived abuses of the rollover rules, Congress adopted what is known as the "trust-to-trust transfer" rule, requiring 20% withholding on any rollover distribution that is not transferred directly to an eligible retirement plan. Section 3605 of the IRC provides, in relevant part, as follows:

> (c) Eligible rollover distributions
>
>> (1) In general
>>
>> In the case of any designated distribution which is an eligible rollover distribution—
>>
>>> (A)subsections (a) and (b) shall not apply, and

11

(B) the payor of such distribution shall withhold from such distribution an amount equal to 20 percent of such distribution.

(2) Exception

Paragraph (1)(B) shall not apply to any distribution if the distributee elects under section 401(a)(31)(A) to have such distribution paid directly to an eligible retirement plan.

(3) Eligible rollover distribution

For purposes of this subsection, the term "eligible rollover distribution" has the meaning given such term by section 402(f)(2)(A).

The United States Court of Appeals for the 11th Circuit affirmed a lower court determination which held that funds distributed from an individual retirement account, used by the account beneficiary for personal purposes, and re-deposited to the IRA account in an effort to qualify for the 60-day rollover period lost their tax-exempt and creditor-exempt status as of the beginning of the year in which the distribution occurred because the personal use of the funds constituted a prohibited transaction. Willis v. Menotte, 424 Fed. App. 880 (11th Cir. 2011), *aff'g* 2010 U.S. Dist. LEXIS (S.D. Fla. 2010), *aff'g* In re Willis, 2009 Bankr. LEXIS 2160 (Bankr. S.D. Fla. 2009). ("Willis")

12

## III.   APPLICATION OF LAW TO FACTS

The relevant facts in this case are not in dispute.  The Debtor withdrew $25,000 from his IRA and used the funds for personal purposes prior to depositing the same amount in the same IRA within the 60-day rollover period.  The Trustee asserts that any such personal use, whether or not during a 60-day rollover period, constitutes a prohibited transaction that destroys the tax-exempt, and therefore, creditor-exempt status of the entire IRA account.

Because the Debtor's IRA is self-directed, he is the only party who exercises any discretionary authority with respect to the management and disposition of assets.  There is, therefore, no question that the Debtor constitutes a fiduciary, and therefore a disqualified person, for purposes of the prohibited transaction rules.  26 U.S.C. §4975(c)(1) and (e)(2)(A).

It is also clear that personal use of IRA funds by a disqualified person constitutes a prohibited transaction.  26 U.S.C. §4975(c)(1)(D).  This is true even if the disqualified person merely borrows the funds from the individual retirement account.  26 U.S.C. §4975(c)(1)(B).  In either event, the Debtor clearly dealt with the assets of his IRA funds for his personal account.  26 U.S.C. §4975(c)(1)(E).  The only question is whether a disqualified person is protected from the consequences of engaging in a prohibited transaction if the improperly used funds

13

a re-deposited into the IRA within the 60-day period provided for rollovers. We contend he is not.

Section 408(d)(3) protects only the <u>payment</u> or <u>distribution</u> of funds which are re-contributed during the 60-day rollover period from being characterized as a prohibited transaction. This covers only the <u>transfer to</u> component of IRC §4975(c)(1)(D), leaving the <u>use by or for the benefit of</u> component unprotected. It certainly does not permit an extension of credit to a disqualified person, which is a prohibited transaction under IRC §4975(c)(1)(B), or the Debtor's dealing with the assets of his IRA funds for his personal account, which is a prohibited transaction under IRC §4975(c)(1)(E). In any event, as set forth above, the legislative history of 60-day rollover provisions make it very clear that Congress intended for the prohibited transaction rules generally, and the prohibition on personal use specifically, were to continue to apply to the funds being rolled over.

This case is indistinguishable from the <u>Willis</u> decision rendered by the Southern District of Florida Bankruptcy Court and approved by both the District Court and the 11th Circuit court of appeals. The bankruptcy court in this case purports to distinguish the case on the basis that the specific transactions engaged in by the Debtor with the IRA funds did not contain the indicia of self-dealing that were apparent in the <u>Willis</u> case. There is no statutory basis for the imposition of a

14

requirement of "indicia of self-dealing", or any bad intent, in the prohibited transaction rules.  Congress determined that the included actions, standing alone, created enough of a risk of injury to the retirement plan assets, that must be prohibited, and that the cost of violating the prohibition was a loss of tax-exempt status.

Congress does not favor 60-day rollovers, perhaps because of the widespread abuse of the rollover provisions to turn impermissible borrowing transactions into permissible rollover transactions.  The trust-to-trust transfer rules assume that a taxpayer who withdraws funds rather than making a direct transfer to another qualified retirement plan is going to use those funds, and therefore requires withholding on those funds.  The election-out provisions that are available for periodic and nonperiodic distributions are not available for transactions intended to qualify as eligible rollover distributions.  It cannot be any clearer that rollovers are for rollovers, and not for the purpose of allowing what would otherwise be a prohibited loan from an individual retirement account to its owner.

The Debtor will argue that the Trustee's position in this case renders meaningless the allowance of the 60-day rollover period.  This is incorrect.  A taxpayer may withdraw his IRA funds from one an account with one financial institution, and may use the 60 days to establish an account with a second financial

institution and to deposit the withdrawn funds therein, without running afoul of the prohibited transaction rules, so long as the taxpayer does not use those funds for personal purposes during that 60-day period. This reading makes eminent good sense when the 60-day rollover rule is considered in light of the time at which it was enacted. While it is true that, in this current electronic age, we all have the ability to accomplish an account transfer immediately, anyone who was alive in 1974 can tell you that 60 days was perhaps an ungenerous period of time for accomplishing that result, depending on the sophistication of the financial institutions with which one was dealing.

The Debtor will argue that the personal use of funds by a disqualified person has been approved in guidance provided by the Internal Revenue Service. It is true that there are private letter rulings which seem to permit the personal use of funds by a disqualified person during the rollover period. Of course, private letter rulings are just that, private – they cannot be relied upon by any taxpayer other than the taxpayer to whom the private letter ruling is directed. In addition, it is interesting that the Debtor does not cite, and we have been unable to find, any such private letter rulings that were issued after the 11th Circuit's decision in <u>Willis</u>.

It is also true that the IRS publication on individual retirement accounts implies that personal use during the 60-day rollover period is acceptable.

Nevertheless, such informal guidance, even though widely distributed and relied upon, cannot override the Congressional mandate that individual retirement account funds may not be used for personal purposes.

## CONCLUSION

The bankruptcy court erred in failing to apply the statutory prohibition on the personal use of individual retirement accounts to the IRA funds used by the Debtor during the 60-day rollover period.  The result of the Debtor's engaging in a prohibited transaction is the loss of tax-exempt status for the entire IRA account as of the beginning of the year in which the prohibited transaction occurred.  An individual retirement account that has lost its tax-exempt status has also lost its creditor-exempt status under the Bankruptcy Code.  For the foregoing reasons, the bankruptcy court's denial of the Trustee's objection to the exemption of the Debtor's IRA account should be reversed.

## REQUEST FOR ORAL ARGUMENT

Appellant requests that an oral argument be conducted in this case.  The interpretation of the application of the prohibited transaction rules to individual retirement account funds during the 60-day rollover period will set a precedent affecting thousands of bankruptcy cases every year.  The Appellant believes oral argument will assist all of the parties in presenting this case for the Court's review.

17

This the 13th day of January, 2014.

<div style="margin-left: 50%;">

s/Amy Marvine Currin

AMY MARVINE CURRIN

N.C. State Bar No.:  26031

OLIVER FRIESEN CHEEK, PLLC

PO Box 1548

New Bern, NC  28563

Telephone: (252) 633-1930

Facsimile: (252) 633-1950

Email: amc@ofc-law.com

</div>

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief  complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

    The word count of this brief is <u>3,498 words</u>.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using

    <u>Microsoft Word, Times New Roman, 14 point</u>.

January 13, 2014

                    /s/ Amy Marvine Currin
                    AMY MARVINE CURRIN

19

## <u>CERTIFICATE OF SERVICE</u>

I, Amy Marvine Currin, Post Office Box 1548, New Bern, North Carolina 28563, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, I served copies of the foregoing Appellant Brief on the parties listed below via CM/ECF.

I certify under penalty of perjury that the foregoing is true and correct.

This the 13th day of January, 2014.

<div align="right">

s/Amy Marvine Currin
AMY MARVINE CURRIN
N.C. State Bar No.:  26031
OLIVER FRIESEN CHEEK, PLLC
PO Box 1548
New Bern, NC  28563
Telephone: (252) 633-1930
Facsimile: (252) 633-1950
Email: amc@ofc-law.com

</div>

To:

| | |
|---|---|
| Anna B. Osterhout, Esq. | (via CM/ECF) |
| Wayne Kenneth Maiorano, Esq. | (via CM/ECF) |
| Amos U. Priester IV, Esq. | (via CM/ECF) |

*Attorneys for Appellee*